ARTHUR HUEY V. THE STATE.

No. 18328. Delivered October 7, 1936.
Rehearing Denied February 17, 1937.

The opinion states the case.

*Reeder & Reeder,* of Amarillo, for appellant.

*W. L. McConnell,* District Attorney, of Panhandle, *E. A. Simpson* (of Simpson, Dorenfield, Foster & Fullingim), of Amarillo, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is misapplication of county funds; the punishment, confinement in the penitentiary for four years.

Apellant was assessor and collector of taxes of Hutchinson County. On the 30th of March, 1935, he reported to the authorities that he had been robbed of more than $8,000 while on his way to the county depository in Carson County. The proof on the part of the State warranted the conclusion of the jury that the robbery was prearranged by appellant and another in order that appellant might convert county funds and adjust a shortage in his accounts. Testifying in his own behalf, appellant denied that he converted any money belonging to Hutchinson County and maintained that he had been robbed by two men while on his way to the county depository.

It was alleged in the indictment that the conversion occurred in Hutchinson County. The charge of the court authorized a conviction in the event the jury believed beyond a reasonable doubt that the money was converted either in Hutchinson County or Carson County. There was no exception to this instruction. However, appellant contends that fundamental error is presented, his position being that the proof conclusively

shows that the conversion, if any, occurred in Carson County. We deem it unecessary to determine whether venue in prosecutions under Art. 95, P. C., under which appellant was convicted, is controlled by the general statute relating to venue in cases of embezzlement. We think the record conclusively shows that the conversion, if any, occurred in Hutchinson County. It was appellant's theory that he was robbed in Carson County. The court instructed the jury to acquit him if they entertained a reasonable doubt as to this matter. It was the State's theory, given sufficient support in the testimony, that appellant and another prearranged the robbery in Hutchinson County, and that the robbery was faked in Carson County. When the jury concluded that appellant had not been robbed, the only other conclusion they could have reached under the evidence was that when he left Hutchinson County "he had conceived a fraudulent purpose of converting the property, had asserted title and ownership in himself, and had done every act and thing necessary to constitute embezzlement of said property in Hutchinson County." See Piper v. State, 119 S. W., 869. Under the circumstances reflected by the record, we are unable to reach the conclusion that the error in the charge, if any, should work a reversal.

Over objection, the court permitted the State to prove that more than three years prior to the return of the indictment herein appellant had lost several thousand dollars of funds belonging to Hutchinson County by reason of the failure of the Borger State Bank, and that at the time of the alleged robbery of appellant there was a shortage in his accounts by virtue of said loss. We have observed that it was the theory of the State, given support in the evidence, that appellant required money to cover the shortage that had existed in his accounts since the bank failure; that for the purpose of securing money he converted a large sum of money belonging to the county; that in order to conceal the subsequent conversion he reported he had been robbed. We are of opinion the testimony was admissible as tending to defeat appellant's defensive theory and to show that he converted the county's funds. The fact that the State could not have successfully prosecuted appellant for the loss of funds in the Borger bank because barred by limitation did not render such testimony inadmissible. Haggart v. State, 178 S. W., 328; Wingo v. State, 210 S. W., 547.

The State proved, over appellant's objection, that in January, 1935, appellant had his deputy Jimmie Neal place a microphone in the office of the district attorney and a dictaphone in

appellant's office in order that appellant might "know what Mr. McConnell (the district attorney) was saying to someone." The testimony shows that at the time the dictaphone was installed appellant was disturbed about the shortage in his accounts and was trying to find ways and means to cover same. The testimony supported the theory of the State that the shortage caused appellant to convert the money involved in the present prosecution. Appellant maintained that he had been guilty of no wrong doing. Hence proof of the fact that he attempted to determine the attitude of the district attorney was admissible as tending to show that he was in fact conscious of wrong doing, and fearful of prosecution.

The State introduced proof to the effect that shortly before the alleged robbery two of appellant's deputies had advised him that Jimmie Neal, another deputy, was dishonest and should be discharged. Appellant replied that he needed him on the outside and could not dispense with his services. It was the State's theory, given support in the evidence, that Neal aided appellant in converting the funds of the county. Appellant testified on cross-examination that he told Neal sometime in March, 1935, just before the alleged robbery, that he had a proposition out of which he and Neal could probably make some money. Neal acted with appellant in the installation of the dictaphone in the district attorney's office. Appellant testified that he was alone in his automobile on the occasion of the robbery. The State introduced testimony to the effect that a car suiting the description of appellant's car had two men in it on said occasion. Under all of the circumstances, proof that appellant refused to discharge Neal was admissible as a circumstance tending to support the theory of the State that Neal and appellant acted together in the prearranged robbery. In this connection it is noted that the State relied upon circumstantial evidence.

Several bills of exception are concerned with the cross-examination of appellant relative to the installation by appellant and Neal of a dictaphone in a hotel room in Dallas. The trial court qualified said bills with the statement that appellant voluntarily went into the matter, and that thereafter the court permitted the State to cross-examine appellant relative to said transaction. As qualified, the bills fail to reflect error.

A careful examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In our original opinion we said of several bills of exceptions, that same were qualified by the trial court so as to show that appellant voluntarily went into the matter complained of, and thereafter the trial court permitted the State to cross-examine appellant relative thereto,—and as qualified no error appeared.

Appellant insists in his motion that we failed to take into consideration all of the contents of said qualifications, and we have again examined each of them. Appellant's bill of exceptions No. 30, in substance, shows that during appellant's cross-examination he was asked if he took Jimmy Neal to Dallas in January, 1935, took him to a hotel, and had him install a dictaphone in one room and conceal himself in another, while appellant got one Chenault to get one Peyton and bring him to said room, all of which appellant seems to have admitted, and he was then asked if he did not tell Peyton: "If you don't cough up something, tell me something on Bill McConnell, I will take you for a ride?" to which latter appellant objected for various reasons, which being overruled,—appellant seems to have answered "No sir."

The qualifications to this bill, in substance, states that appellant had been asked if he and said Neal had not borrowed a master key from the janitor of the court house at Panhandle, Texas, and with it had unlocked the office of Bill McConnell, District Attorney, and if he had told Neal to install a dictaphone there in January, 1935, to which question appellant had volunteered the reply: "I had been to Dallas and made some dictaphone records of former cashier of the Borger State Bank, wherein he told me, ready to turn State's evidence; that Bill McConnell talked him out of it, didn't have to turn State's evidence," and whereupon witness further said: "I was going to get him in and get him right on that very transaction," at which point the State said "Get Mr. McConnell?" and appellant answered "Yes," and the State said "In other words, trying to get something on Bill McConnell?" to which apellant replied "I have got it." We confess ourselves unable to see the vice or failure of this qualification. That the effect of the testimony of the State was to show efforts on appellant's part to reflect

discredit on the State's attorney, and get him in such situation as that he could not prosecute appellant,—seems plain, and that the State might show these efforts on appellant's part for the purpose of affecting his guilt in the transaction here involved, —seems also plain.

To much the same effect is appellant's complaint of the qualfication placed on bills of exceptions 5 and 8, which seem to us not necessary to discuss at any length as they relate to efforts on appellant's part to install a dictaphone in the office of the district attorney.

We are not able to see any reversible error in any of the matters set up in appellant's motion. The real question in the case was whether the facts show that on the 30th of March, 1935, and prior thereto this appellant, as assessor and collector of Hutchinson County, had fraudulently misapplied and converted to his own use a sum of money belonging to said county of amount sufficient to make the conversion a felony. The facts were submitted to a jury, and we are not prepared to say they had not sufficient testimony before them to justify this conviction.

The motion for rehearing is overruled.

*Overruled.*