Cite as 2026 Ark. App. 160

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-717

| | |
|---|---|
| WESTSIDE LOFT APARTMENTS | Opinion Delivered March 4, 2026 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-22-2582] |
| V. | |
| TINA FOWLER | |
| APPELLEE | HONORABLE LATONYA HONORABLE, JUDGE |
| | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Westside Loft Apartments appeals from a judgment entered against it and in favor of appellee Tina Fowler. Westside makes three arguments on appeal: (1) the court erred in denying its motion to dismiss for failure to include a necessary party and motion to add a necessary party; (2) the court erred in striking Westside's answer as a discovery sanction; and (3) the awarded damages were inappropriate and not supported by evidence. We affirm.

I. *Facts and Procedural History*

On February 9, 2022, Fowler was attacked outside her apartment by her neighbor's dog. The neighbor's pit bull slipped out of its collar and lunged at Fowler and her two dogs.[1]

---

[1]Fowler had two Maltese dogs about ten pounds each and had provided Westside all the necessary information that qualified her dogs as "emotional support animals" in accordance with its pet agreement.

Fowler said she was knocked down and was bitten on her right hand, left arm, and neck. Fowler was able to protect one of her dogs, but the other one required three surgeries. Fowler sought medical treatment and received an antibiotic shot for her injuries. Fowler notified management about the incident and inquired whether the pit bull was up to date on its rabies vaccine, but she could never get a definitive answer from management or the pet's owner. Accordingly, Fowler underwent a series of rabies shots.

Following the attack, Fowler submitted complaints to Westside and expressed ongoing concern about the presence of multiple pit bull dogs on the property because she had become aware that there was also a female pit bull living in the apartment that had eight puppies. On February 22, Fowler received an eviction notice citing aggressive behavior toward management in a meeting about the dog attack. Fowler refused to move, and on April 21, 2022, Westside filed an unlawful-detainer complaint for breach of the lease agreement. In response, Fowler filed an answer and counterclaim for negligence, outrage, unlawful detainer, malicious prosecution, and abuse of process. Westside filed an answer and a motion to dismiss its own complaint against Fowler, which was granted on July 21, 2022.

On October 25, Fowler moved to compel discovery, and an order compelling discovery by November 15 was entered.[2] On November 21, Westside answered the discovery

---

[2]The first set of written discovery was submitted on June 21, 2022; counsel sent Westside a reminder via letter dated September 13.

in part, but most of the answers were incomplete, so on November 22, Fowler moved to strike Westside's answer, contending that Westside was seven days late in violation of the order compelling discovery.

On May 12, 2023, Westside moved to join an indispensable party—the actual owners of the dog involved in the attack. On May 25, the court granted Fowler's motion to strike Westside's answer to her counterclaim under Arkansas Rule of Civil Procedure 37(2)(c) and declared that damages would be the only issue at trial. On September 15, Westside moved to dismiss for failure to join a necessary party. The court denied Westside's motion, explaining that it had no basis to grant it because the court had previously set aside the answer in which that defense might have been preserved.

A jury trial was held on June 18, 2024. Fowler testified that before this attack, she had two other run-ins with her neighbor's pit bull. She alleged that she reported the second incident to the property manager but that her complaints were dismissed. Fowler also said that she reached out to Westside inquiring about the pit bull's service-animal status because Westside's pet agreement prohibited certain breeds, including pit bulls, but never received an answer.

Fowler testified to the medical and veterinary expenses she incurred from the February attack. She also said that she eventually chose to move out of the apartment and rent a house in a nearby neighborhood. She presented the costs associated with her move to the jury. Specifically, Fowler testified to medical expenses totaling $10,951.68; vet bills totaling $982.00; $601.23 to a moving company to leave the apartment; and an additional

$400.00 for a new residential deposit. In addition to these expenses, she testified to the pain she experienced from the side effects of the four rabies shots she received and the anxiety and fear that stemmed from the attack.

The jury returned a verdict in Fowler's favor awarding her $30,000 in compensatory damages and $10,000 in punitive damages. The jury's decision was reduced to a $40,000 written judgment entered on July 1, 2024. Westside filed a motion for new trial on July 15. It filed a notice of appeal on July 30 and amended notice of appeal on August 15 to include the deemed denial of its post-trial motion.

## II. *Necessary Party*

Westside contends that the circuit court erred in denying its motions to add a necessary party and to dismiss for failure to join a necessary party under Arkansas Rule of Civil Procedure 12(b)(7). It argues that the dog's owners were indispensable parties because Fowler's injuries would not have occurred without their actions and because the jury could have apportioned fault to them.

Westside first moved to add the dog's owners under Rule 19 on May 12, 2023—nearly a year after Fowler filed her counterclaim—and later moved to dismiss on September 15, 2023. A motion to dismiss is warranted for failure to join a party under Rule 19 of the Arkansas Rules of Civil Procedure. Ark. R. Crim. P. 12(b)(7) (2021). Rule 19 requires joinder of parties necessary for a "just adjudication," ensuring that all persons materially affected by the outcome are included. *See Smith v. Moore*, 49 Ark. 100, 103, 4 S.W. 282, 283 (1887) (interpreting a predecessor of Rules 19 and 24).

4

However, both motions were ruled on after the court had struck Westside's answer as a discovery sanction. Under Arkansas law, Rule 12(b) defenses must be pleaded in an answer or original responsive pleading, and the defense of indispensable parties may be waived. *See Dobbs v. Discover Bank*, 2012 Ark. App. 678, at 11, 425 S.W.3d 50, 57; *see also Vibo Corp. v. State ex rel. McDaniel*, 2011 Ark. 124, at 10, 380 S.W.3d 411, 420. Because judgment on liability had been entered, Westside no longer had an operative pleading and therefore lacked standing to seek affirmative relief. Moreover, Fowler's claims against Westside included its duty to maintain a safe premises and to enforce its own policies, which did not directly concern the owners of the dog. The court did not err in denying Westside's motions.

## III. *Discovery Sanction*

Westside next argues that the circuit court erred in striking its answer as a discovery sanction. Westside makes this argument too late since it cannot challenge this type of intermediate order after entry of final judgment.

Arkansas Rule of Appellate Procedure–Civil 2(a)(4) provides that an appeal may be taken from "[a]n order which strikes out an answer, or any part of an answer, or any pleading in an action." An order striking a pleading that may be appealed pursuant to Rule 2(a)(4) must be appealed within thirty days from its entry. *In re Est. of Stinnett*, 2011 Ark. 278, at 8, 383 S.W.3d 357, 361–62. Here, the order striking the answer was entered on May 25, 2023. Westside's notice of appeal was not filed until July 30, 2024—well beyond the thirty-day

deadline. Accordingly, the notice of appeal was untimely as to that order, and this court lacks jurisdiction to review any portion of the appeal challenging the discovery sanction.

IV. *Damages*

As its last point, Westside argues that the evidence was insufficient to support the jury's award of damages. It asserts that the verdict was excessive, speculative, and unsupported by medical evidence, particularly focusing on the costs of the rabies shots and other treatments that were not contemporaneous with the dog bite. It also argues that the award appears to have been given under the influence of passion or prejudice due to Fowler's testimony regarding the dangerousness of the pit bull breed.

The record shows that Westside moved for a directed verdict at trial, contending that Fowler failed to prove the reasonableness and necessity of her medical expenses for the rabies shots and x-ray. Arkansas Rule of Civil Procedure 50(a) requires that a directed-verdict motion "state the specific grounds therefor." To the extent Westside brings up any other arguments challenging sufficiency not related to the rabies shots or x-ray, they are not preserved for our review.

A directed-verdict motion is a challenge to the sufficiency of the evidence, and when reviewing the denial of a motion for a directed verdict, this court determines whether the jury's verdict is supported by substantial evidence. *Ken's Discount Bldg. Materials, Inc. v. Meeks*, 95 Ark. App. 37, 233 S.W.3d 176 (2006). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without having to resort to speculation or conjecture. *Id.* When determining the

6

sufficiency of the evidence, this court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.*

A party seeking to recover medical expenses in a personal-injury case has the burden of proving both the reasonableness and necessity of those expenses. *Bell v. Stafford*, 284 Ark. 196, 199, 680 S.W.2d 700, 702 (1984). However, expert medical testimony is not essential in every case to prove the reasonableness and necessity of medical expenses. *Id.* The circuit court has some discretion in deciding whether a non-expert witness, usually the injured party, has laid a sufficient foundation to testify about reasonableness and a causal relationship. *Id.* The testimony of the injured party alone, in some cases, can provide a sufficient foundation for the introduction of medical expenses incurred. *Id.*

Here, Fowler testified in detail about the dog attack, her injuries, and her fear of contracting rabies, which prompted the series of shots. The shots were clearly related to the dog bite; thus, this did not require expert testimony. The jury was entitled to weigh Fowler's credibility and determine whether the expense was necessary and reasonable. Given these circumstances, the jury justifiably determined that it was not unreasonable for Fowler to seek rabies treatment when the dog's vaccination status was unclear.

Further, Fowler testified about how painful the shots were and lingering symptoms of nausea, soreness, joint pain, and emotional distress. Notably, Fowler sought $100,000 in compensatory and punitive damages, and the jury awarded $30,000 compensatory and $10,000 punitive damages. Her unrefuted testimony was for $10,951.68 in medical expenses.

While those medical expenses are the only damages that Westside challenged in its directed-verdict motion, Fowler also testified about her pain and suffering from the incident; veterinary expenses; moving expenses; and a new residence deposit. We hold that the jury's award was supported by substantial evidence.

Further, when an award of damages is alleged on appeal to be excessive, we review the proof and all reasonable inferences most favorably to the appellee and determine whether the verdict is so great as to shock the conscience or demonstrate passion or prejudice on the part of the jury. *Advocat, Inc. v. Sauer*, 353 Ark. 29, 44–45, 111 S.W.3d 346, 354 (2003). Our supreme court has held that there is no definite and satisfactory rule to measure compensation for pain and suffering; the amount of damages must depend on the circumstances of each particular case. *Id.* Additionally, we have held that compensation for pain and suffering must be left to the sound discretion of the jury, and the conclusion reached by it should not be disturbed unless the award is clearly excessive. *Id.*

Westside argues that the damages award clearly reflects that the jury's passions were inflamed by the negative perception of pit bulls and its beliefs that they are dangerous. However, this is a conclusory assertion because Westside fails to point to any specific testimony that would have inflamed the jury regarding pit bulls. Construing all reasonable inferences in Fowler's favor, we do not find the amount of the verdict so great as to shock the conscience. Nor does the verdict demonstrate passion or prejudice on the part of the jury.

Finally, Westside challenges the punitive-damages awarded. However, it made no directed-verdict motion to dismiss Fowler's claim for punitive damages, nor did it object to the jury being instructed on punitive damages. Thus, we are precluded from addressing the issue now. *See Prendergast v. Craft*, 102 Ark. App. 237, 245, 284 S.W.3d 104, 110 (2008).

However, the same does not hold true for Westside's argument that the punitive-damages award was excessive, even though that argument was also made for the first time in the posttrial motion. Obviously, a party is unaware of the excessive nature of a verdict until that verdict is rendered. *See Id.* We therefore consider the merits of this argument.

As touched on above, when the argument on appeal is that the damages are excessive as a matter of state law, we review the proof and all reasonable inferences in the light most favorable to the appellees, and we determine whether the verdict is so great as to shock the conscience of this court or to demonstrate passion or prejudice on the part of the trier of fact. *Calvary Christian Sch., Inc. v. Huffstuttler*, 367 Ark. 117, 238 S.W.3d 58 (2006). When reviewing an award of punitive damages, we consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *Id.*

Here, the punitive-damages award does not shock the conscience of the court. The jury heard Fowler's testimony that Westside ignored her warnings about the pit bull; failed to follow up with her after the attack; refused to collect or provide proof of vaccination for the dog; served Fowler an eviction notice shortly after the complaints that stemmed from the attack; and failed to secure supporting documentation from the dog's owners regarding

9

service-animal status despite Westside's policy requiring these records. It was for the jury to determine what testimony it deemed credible and how much weight it accorded the evidence. This court may not substitute its judgment for the jury's when there is a basis in the evidence for the award and when there is no evidence, appropriately objected to, that tends to create passion or prejudice. *Prendergast*, 102 Ark. App. at 246, 284 S.W.3d at 111. Accordingly, we affirm the damages award.

Affirmed.

GLADWIN and WOOD, JJ., agree.

*The Firm, PLLC*, by: *S.L. Smith*, for appellant.

*Ogles Law Firm*, by: *John Ogles*, for appellee.